FOURTH DEPARTMENT, DECEMBER, 1962

(December 6, 1962)

■    In the Matter of the Estate of STEPHEN R. BRAYTON, Deceased. FANNIE E. BRAYTON et al., Appellants. MILDRED E. MERRIMAN, Respondent.

MEMORANDUM BY THE COURT. Upon the facts here presented it was an improvident exercise of discretion for the Surrogate to grant letters of administration with the will annexed to the committee of the life beneficiary. Such action placed one of the committee (Mildred E. Merriman) in a dual position that may result in serious conflict. Mrs. Merriman's husband, Warren C. Merriman, and the life beneficiary were executors of the will from 1935 to June 19, 1950 when the latter was removed by reason of her incompetency. There was no accounting, however, by Merriman and the committee of his coexecutor for the period from 1938 to 1950. In addition there was no accounting by Merriman from 1950 to the time of his death in 1960. Neither has Mrs. Merriman, as executor of her husband's will accounted for his activities from 1938 to the present. Upon the hearing herein proof was offered that in 1938 Merriman, as executor, assigned certain mortgages owned by the estate to a third party and the following day the latter reassigned the mortgages to Merriman as an individual. Under the will the presently incompetent life beneficiary was given the right to invade the corpus of the estate. If need therefor arises and the right now exists it may be pursued by the committee. We conclude that the best interests of the estate and the exercise of a proper discretion require that letters testamentary with the will annexed issue to appellant, Abby L. Brayton Ruediger, and Herkimer County Trust Company, one of the committee of Jennie A. Brayton, the incompetent life beneficiary.

HALPERN, J. (dissenting). The Surrogate issued letters of administration with the will annexed in the estate of Stephen R. Brayton to the respondents Mildred E. Merriman and Herkimer County Trust Company, as committee of the person and estate of Jennie A. Brayton, an incompetent person. The majority proposes to make two changes in the Surrogate's decree: (1) to add one of the appellants, Abby L. B. Ruediger, as administrator; (2) to eliminate Mildred E. Merriman, one of the committee of Jennie A. Brayton, as one of the administrators of the estate. In my opinion, neither change is justified.

(1) The testator gave and bequeathed to his wife Jennie A. Brayton " as much of the income of all my remaining property both real and personal, that she may need or desire to use in caring for herself  *  *  *  and for the support of any charitable purposes that she may think wise to help. And if any time the income of my property is not sufficient for the support of the above mentioned persons or objects, I devise and bequeath as much of the principal as she may need or want to use for the support of above persons or charitable objects ".

The testator further provided that the residue of his estate " if any remains " should go to his " brother and sisters and my nephew, Warren C. Merriman," if they were living at the time of the widow's death and " in case no brother or sister or nephew shall then be living " the residue should go to the testator's " heirs at law and next of kin ". The testator's brother, sisters and nephew all predeceased his widow. The appellants are cousins of the testator who claim to be entitled to a share of the residue as his " heirs ", but of course the

testator's heirs will have to be determined at the time of the death of the widow (*Matter of Carlin,* 6 A D 2d 281, affd. 6 N Y 2d 914), and the claimants will not be able to qualify as heirs unless they are living at that time.

It thus appears that Mrs. Brayton is the principal beneficiary of the residuary estate; she is the life beneficiary of the entire residuary estate with an extensive power to invade the principal. In contrast, the interest of the appellants, if any, is a tenuous and contingent one. They will be entitled to take only if they survive Mrs. Brayton and even then they will take only to the extent that there may be anything remaining in the estate after the exercise of the power of invasion.

Mrs. Brayton and the testator's nephew Warren C. Merriman were appointed executors of the testator's will upon its probate in 1936. Mrs. Brayton became incompetent in 1950 and from that time until his death in 1960, Warren C. Merriman continued as the sole executor. The respondent Mildred Merriman is the widow of Warren C. Merriman, and is the executrix of his estate. In 1961, Mrs. Merriman and the other respondent, the Herkimer County Trust Company, were appointed committee of the person and estate of Mrs. Brayton.

Under section 133 of the Surrogate's Court Act, the committee was entitled to appointment as administrator with the will annexed of the Brayton estate, "with the same priority" as if Mrs. Brayton were herself "qualified to take letters".

If Mrs. Brayton were now competent she would undoubtedly be entitled to sole letters of administration with the will annexed. Her committee is therefore entitled to sole letters.

The purpose of section 133 of the Surrogate's Court Act, as amended by chapter 350 of the Laws of 1952, is to give priority in the issuance of letters to the persons having the "greater actual interests in the estate" (Official Note by the New York State Surrogates' Association to L. 1952, ch. 350). "Among members of a class the holder of the largest interest is preferred" (2 Jessup Redfield, Surrogates' Law and Practice, § 1410). "The preference is for him who has the largest interest, unless disqualified" (11 Carmody-Wait, New York Practice, p. 698, § 873; *Matter of Hoppin,* 3 Misc 2d 315, 320–322).

It is questionable whether the appellants are even in the same class of priority as the respondents. The respondents are the committee of the principal residuary beneficiary and as such are entitled to letters under subdivision 2 of section 133. (*Matter of Folsom,* 3 Misc 2d 75, affd. 1 A D 2d 1041, affd. 2 N Y 2d 984.) The term "residuary beneficiaries" in subdivision 2 of section 133 may well be construed to include only those having a vested or "actual" interest in the residue (see Official Note, *supra*). Persons with a contingent interest in the residue are "persons interested in the estate" under subdivision 3 of section 133. The expression "persons interested" is defined in subdivision 10 of section 314 of the Surrogate's Court Act as including "every person entitled, either absolutely or contingently, to share in the estate or the proceeds thereof". Reading sections 133 and 314 together, it may well be held that persons in the position of the appellants who have only a contingent interest in the residue, fall within subdivision 3 rather than subdivision 2 of section 133 and that therefore their right to letters is, as a matter of law, subordinate to that of beneficiaries with a vested interest in the residue. But even if it is held that the appellants fall within subdivision 2, the respondents clearly have the largest or principal interest in the residue and are entitled to priority under the principle laid down in the authorities cited above.

The proposed modification by the majority under which Mrs. Ruediger, one of the appellants, would be allowed to share in the administration of the estate,

in my opinion, is not only contrary to law but also contrary to the best interests of the estate. Mrs. Ruediger is a resident of California, and it is unlikely that she will contribute any beneficial services in the administration of the estate. As a matter of fact, Mrs. Ruediger preferred not to be appointed an administrator, provided that a trust company of her choice, "either the Oneida National Bank and Trust Co. of Central New York, or Marine Midland Trust Company of the Mohawk Valley" were appointed as sole administrator. It appears that there is hostility between Mrs. Ruediger and the committee of Mrs. Brayton and her addition as a coadministrator will inject an element of discord which will be injurious to the estate; it may even reach the point of deadlocking the administration. She will undoubtedly wish to have an attorney and an accountant of her own, and as a result the estate will be saddled with unnecessary expense. On the other hand, there is no showing that Mrs. Ruediger's interests, or the interests of the other appellants, will be in any way jeopardized by the joint administration of the estate by Mrs. Merriman and the Herkimer County Trust Company, the committee of Mrs. Brayton.

(2) The majority recognizes the propriety of the appointment of the committee of Mrs. Brayton as administrator of the estate by affirming the designation of the Herkimer County Trust Company as committee, as one of the administrators. But the majority proposes to split the committee (despite the fact that it is a single unit) in two, and to issue letters to one member of the committee, while excluding the other member. This cannot be sustained except upon a showing that the excluded member is disqualified to serve as a coadministrator as a matter of law. The grounds of disqualification of an administrator are set forth in section 94 of the Surrogate's Court Act. Section 94 is expressly made applicable to the appointment of administrators with the will annexed by the second last paragraph of section 133. It is conceded that Mrs. Merriman is not disqualified under any of the provisions of section 94. "It has been uniformly held heretofore that the grounds for disqualification set forth in section 94 are exclusive, and that the Surrogate's power to refuse letters is limited by that statute (*Matter of Flood*, 236 N. Y. 408; *Matter of Leland*, 219 N. Y. 387; *Matter of Latham*, 145 App. Div. 849). The texts agree. 'If the candidate cannot be slotted in any subdivision listing a disqualifying cause he may act' (2 Jessup-Redfield on Surrogate's Law and Practice [1947], § 1284. Accord, 2 Butler on New York Surrogate Law and Practice [1941], § 1161; 2 Warren's Heaton on Surrogates' Courts [1952], § 128, par. 1, subd. [a])." (*Matter of Foss*, 282 App. Div. 509, 511.)

The majority memorandum suggests at one point that the disqualification of Mrs. Merriman may be based upon the fact that "Under the will the presently incompetent life beneficiary was given the right to invade the corpus of the estate" and that the committee may be entitled to exercise that right. Under this line of reasoning, any life beneficiary with a power to invade the principal would be held to be disqualified because the exercise of his right of invasion would be detrimental of the interests of the contingent remaindermen. This would produce an anomalous result, directly contrary to the wishes of the testator who obviously desired that prior consideration should be given to the needs and wishes of the life beneficiary in whom he had vested the power of invasion. In any event, the alleged conflict between the interests of the life beneficiary and the interests of the remaindermen is not a statutory ground of disqualification, either of the life beneficiary or, in case of incompetency, of her committee, under sections 94 and 133 of the Surrogate's Court Act. Apparently the majority came to the conclusion, at the end of its memorandum, that the alleged conflict is not a ground of disqualification, because it decided to issue

letters of administration to one member of the committee. If the disqualification existed, it would, of course, be equally applicable to both members of the committee.

It is also suggested in the majority memorandum that there may have been some wrongdoing on the part of Warren C. Merriman during his lifetime in the course of his coexecutorship, but there is no basis in the record for any conclusion of that kind. Inferences are sought to be drawn from the fact that Merriman apparently took an assignment of certain mortgages which had once been owned by the estate, but no inference of misconduct can properly be drawn from the meager record on that subject. All that appears in the record is the fact that back in 1938 certain assignments had been made. The circumstances would have to be fully explored before any finding could be made with respect thereto. As the appellants themselves state in their sworn answer: "There may, of course, be facts unknown to the respondents [the appellants in this court] under which the foregoing assignments were entirely proper." In any event, the only question which might affect Mrs. Merriman is the question, not of misconduct on her deceased husband's part, but of a surcharge against his estate of which she is the executor. There is no evidence in this record that the Brayton estate suffered any loss by reason of the mortgage transactions. So far as appears, the estate received the full face amount of the mortgages and, if it did, there would be no basis for a surcharge. It also appears from the answer of the appellants that during the stewardship of Warren Merriman the value of the estate increased from $85,000 in 1938 to an amount now estimated at $200,000,

The question of whether Merriman's estate should be surcharged on account of any transaction in which Merriman had engaged while executor of the Brayton estate is a question which must be tried out in an accounting proceeding in the Brayton estate. No account has as yet been filed, and no claim for surcharge has as yet been made. The appellants will have a full opportunity to present their views in the Surrogate's Court with respect to any claim against the Merriman estate, under section 209 of the Surrogate's Court Act. (See *infra.*)

As the majority memorandum notes, the Herkimer County Trust Company, as one of the committee of Mrs. Brayton, will be required to account for her coexecutorship of the estate during the years 1938 to 1950. Controversies may arise in connection with that accounting; yet that is not regarded by the majority as a ground for the disqualification of the Trust Company.

The alleged possibility of a conflict of interest in connection with an accounting to be made of Merriman's executorship is not a ground for disqualifying Mrs. Merriman. As Judge BREITEL pointed out in *Matter of Foss* (282 App. Div. 510, 513, *supra*) "In the event that the coexecutor's apparent conflict of interest should lead to misconduct * * * objectants will not be left without remedy (Surrogate's Ct. Act, § 99) * * * It would be a serious matter to make any claim of conflict of interest a ground for disqualifying designated executors * * * Many estates would be subjected to extended proof-taking to determine whether the claimed conflict in fact existed * * * Misconduct, not conflict in interest, merits removal of a fiduciary (Surrogate's Ct. Act, § 99). The statute provides for resolving claims between the estate and its representative (Surrogate's Ct. Act, § 209)." An alleged conflict of interest is not a ground for disqualification of an administrator. "A surrogate has no discretion to exclude a person declared by the statute to be entitled to priority, except in cases where his disqualification is declared by the statute itself". (*Matter of McOwen,* 114 Misc. 151, 155; cf. *Matter of Kent,* 22 Misc 2d 66, 68; *Matter of Puglisi,* 205 Misc. 773.)

In the absence of any basis for disqualification of Mrs. Merriman, both Mrs. Merriman and the Herkimer County Trust Company, as committee of Mrs. Brayton, should be named administrators with the will annexed.

For these reasons, I dissent from the decision about to be made and I vote to affirm the decree of the Surrogate's Court.

Williams, P. J., Bastow, McClusky and Henry, JJ., concur in Memorandum by the Court; Halpern, J., dissents and votes to affirm in opinion.

Decree reversed on law and facts, without costs of this appeal to any party and matter remitted to Surrogate's Court of Herkimer County for further proceedings in accordance with memorandum.